The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and Good morning, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. Before we begin, I want to extend a warm welcome and thank you to our colleague, Judge Jasmine Yoon, from the Weston District of Virginia, who has graciously agreed to take time off from her very busy other day job to join us this morning. Thank you so much for being with us. We have four cases on the docket this morning. First up is 24-6027 Landholt v. Corley. And we have one attorney appearing remote, Mr. Lindemann and Mr. Truelock. I hope I'm saying that correctly whenever you're ready. Truelock, Your Honor. Truelock, go ahead. Your Honors, may it please the Court, my name is Chris Truelock. I'm on behalf of the appellant, Timothy Landholt. This case begins under the jurisdiction of the Richland County Clerk of Family Court. Mr. Landholt was under their jurisdiction pursuant to child support order. On March 13th of 2014, a bench warrant was issued for his seizure for failure to appear upon a rule to show cause for child support payments. The record would indicate that he was unaware of this. That's not particularly relevant. But in any event, sometime between March 24th of 2014 until June 25th of 2014, I'll come back around to this, the date is uncertain, the clerk of court received a bench warrant from Judge Jones requiring that he be seized and brought before the court to answer for his failure to appear at the child support hearing. The clerk of court between March 24th and June 25th of 2014 transmitted a duplicate warrant on their own accord and without any instruction from the judge to the Richland County Sheriff's Department, supposedly for the purposes of seizing Mr. Landholt in the event they find him. On March 28th, 2014, my client, Mr. Landholt, voluntarily appeared at the Richland County Family Court to make a child support payment. He was unaware there was a bench warrant for his arrest. Again, that's not particularly relevant. This is background for the court. He was seized then and there in the courtroom and brought before Judge Morris. This is a different judge than who issued the bench warrant, but again, this is just for context. The court understands that this was the duty judge at the time. He was brought in front of the duty judge, and Judge Morris heard him out, decided that she would restructure his payments, required that he pay $200, and that he, quote, be released from court that day. I quote, be released from court that day, Your Honor, because the appellant takes the position that that was at least, if not earlier, the last moment that the court really had anything to do with the bench warrant. Now, from that moment he was released, again, it's uncertain whether or not the clerk of court transmitted the duplicate warrant, a copy of the original bench warrant for his arrest, from March 24th, just before his seizure, until June 25th of 2014, many months after, to the Richland County Sheriff's Department, that that duplicate remained with the Richland County Sheriff's Department after he had been seized with the initial bench warrant for his seizure. That bench warrant remains. So, Mr. True, look, you know, I appreciate the recitation of these background facts, but I don't know, we're certainly not here to adjudicate whether or not the clerk did something wrong, right? The question is whether or not there's immunity for whatever missteps the particular state official might have committed. So, I think we need to get to that. Yes, Your Honor. So, Your Honor, ultimately, the testimony from the deputy clerk of court, Mr. Janet Irvine, who's the number two and was deposed as a 30B6 witness for the clerk of court's office, the governmental entity, IT, also known as Ms. Janet McBride in her official capacity, testified that it was the clerk's responsibility to issue or transmit these bench warrants to the Sheriff's Department for seizure, and that it was a, quote, mandatory process for them to recall these bench warrants if they had been served, as in this instance, where he was served in the courthouse, but yet a copy of this duplicate bench warrant was with the Richland County Sheriff's Department for four and a half years before he was seized again on the same exact bench warrant in 2019 in August. They testified that it was a mandatory process that they handled this and that there was a failure of any documentation in the file to show that they had recalled this bench warrant, which should have been in there, and the normal business purpose. And if I haven't already said this, Your Honor, again, Mrs. Irvine confirmed that this was the clerk's responsibility. Otherwise, the record, Your Honor, has no information to indicate that Judge Morris or Judge Jones had any idea. So if I understand, your position is that because this was a mandatory duty that did not lend itself to any discretion, that the South Carolina's State Immunity Act shouldn't apply in this context. That's correct, Your Honor. I would take it a step further and say that at the summary judgment stage, that the defendant who had the affirmative burden of resolving all genuine issues of fact did not meet that burden as well. But yes, Your Honor, ultimately that the law was incorrectly applied and ignored South Carolina president. So before we get to that issue, so why why are we as a federal court? Obviously, I don't know. There's no question about our jurisdiction, I guess. But why should we decide that question in the first instance rather than having, for example, South Carolina's highest court? Do that be a certification? Your Honor, I suppose that the that would be an appropriate mechanism for this court. But I would submit that since the case law appears very clear on this matter, that this court could decide the issue. There is no case law. I mean, what do you mean it's clear? Tell me why you think it's clear. Your Honor, respectfully, I would cite to the Proctor v. Department of Health, which is cited in the opposition motion for summary judgment and, of course, the opposition to the recommendation. The Proctor court, Your Honor, I think made it unequivocally clear that the analysis of whether or not a governmental entity receives qualified or quasi judicial immunity is whether or not they were acting in a discretionary capacity, in which case they should receive it, or if the act was one that was required that they did not complete, in which case they should not. Is that court interpreting the state immunity statute? Yes, Your Honor. Not only go ahead. Not only was it interpreting sections. Well, actually, all of them are. But the only relevant ones for today are sections one and two. Which talk about judicial immunity and quasi judicial immunity and administrative action and inaction of a quasi judicial nature. The Proctor case evaluated that, and they cited the Hawkins case, Hawkins v. City of Greenville. And in that, they clearly stated that the real question is whether or not the act, not the act or. The act was one that was mandatory, whether it was a ministerial duty for this individual. If the act was discretionary, then they might be able to receive the immunity of quasi judicial immunity. If the then-defendant, now appellee, could establish that beyond a judicial duty. And who was the actor in Proctor? The actor in Proctor, Your Honor, was the city. Oh, well, in Proctor, it was the. Your Honor, I forget the name of the agency. It was the agency responsible of controlling. I think it's Department of Health, Your Honor. It was in control. Was that a case that was brought to the district court's attention or analyzed in any way by the district court? It was brought to the district court's attention. Proctor was brought to the district court's attention, Your Honor. Yes, the district court seemed to read the appellant's citation to Long v. Seabrook, which is also cited by many of the cases in Proctor. But right underneath that block quote to Long v. Seabrook was the block quote to Proctor, which unequivocally said. That the analysis of whether or not these individuals received qualified immunity is whether or not it was ministerial or discretionary. But if you look at the statute itself, I see that under Section 5, there's a word discretion in there. So I'm talking about the South Carolina Tort Claims Act. It says the exercise of discretion or judgment by the government entity, and it goes. But we're looking at Sections 1 and 2, and I don't see the word mandatory or discretionary there. So don't you think that the legislators would have made it clear by either saying nondiscretionary or mandatory when drafting the Sections 1 and 2 of the statute? I do not in this case, Your Honor. And that is because Proctor made clear that the codification of Sections 1 and 2 was a codification of the McCall case, which the Supreme Court issued abolishing sovereign immunity. And that Proctor said that those two sections that the appellee relies on, and presumably including the discretionary section, were a codification of the 1985 case of McCall before the Tort Claims Act was enacted in 1986. They said this is what the legislature codified. They codified the McCall case. And so the McCall case said that, and they basically said they were taking it verbatim, that the meaning of the terms of qualified immunity were not about the actor, who they were. It was about the act, and it applied to ministerial duty. So, yes, Your Honor, if you read the South Carolina Tort Claims Act without the context of the McCall case, I understand how there could be confusion there. But the McCall case, and especially the Proctor case, clears that up and says, no, do not confuse quasi-judicial immunity with the role of the actor. Analyze the act of the actor. And the act, as this Court has said in Maryland v. McCrae, is quasi-judicial immunity is not a formal association with the judge, but an exercise of discretion like a judge. And that was basically the exact same determination of the McCall case and the Proctor case in 2006 and the Proctor case citing Hawkins v. City of Greenville in 2004. So, Your Honor, I understand how without understanding what that language really means, quasi-judicial, could lead to an interpretation that the Court below made, especially in relying on De Soto, Your Honor, which is in direct conflict with the Proctor case. And if you look to the dissent in De Soto, the dissent really clears that up and actually points to the United States Supreme Court and clarifies that where the United States Supreme Court stated in Anton v. Byers and Anderson that other than judges, quasi-judicial immunity is functionally comparable to discretionary judgment. Because the point is that judges have extreme discretion, but that protection from liability ends at the end of discretion when it becomes administrative, when it becomes ministerial. And they impose that same responsibility on actors under the government as they would, although to a much less favorable degree for non-judges, where they state that you have to analyze whether or not the act was ministerial or mandatory. If it was ministerial or mandatory, in other words, not discretionary, then they are not entitled to the quasi-judicial protections that the Court below in this case afforded. Why can't the state statute, Section 2 of that statute, that talks about administrative action of a judicial or quasi-judicial nature, encompass the sort of ministerial action that occurred in this case? Your Honor, I would say because of that qualification of a quasi-judicial nature and also because Proctor is explaining the Hawkins case that it cites actually doesn't deal with just Section 1. It deals with Section 1, 2, 3, 4, 5, and 13, I recall, Your Honor. They read those two sections as one and the same, and the administrative inaction qualified of a quasi-judicial nature is what changes it and makes sure that the protection is only when it's in a quasi-judicial nature, which, again, the United States Supreme Court and Proctor for the South Carolina courts has said quasi-judicial immunity is really a determination of whether or not it's discretionary or ministerial. So the Court, again, Your Honor, is pointing to the fact that- So how do you define administrative then? What's administrative to your mind under the statute? To my mind, Your Honor. Well, unless you wrote the statute, maybe not. But tell me what you think the legislators intended. My reading of the Proctor case, Your Honor, which is tantamount to a treatise on these issues when they talk about Fale and Clark and all these other cases, is that administrative without that qualifying language, administrative of a quasi-judicial nature, administrative is ministerial, Your Honor. That's how I read that. In other words, it's not a discretionary task. It's one that must be done in the course of that governmental entity's responsibilities, Your Honor. Do you have any South Carolina Supreme Court case that stands for the fact that administrative action includes quasi-judicial or what you just said is a mandatory action? I beg the Court's indulgence. There is a citation, I believe it's in the Proctor case, that says that even judges aren't protected from administrative tasks. And that's how I came to that conclusion, because I struggle with that as well, is that, you know, what is the difference between the statute which says administrative action or inaction of a quasi-judicial nature, which is very important, versus an administrative task? I believe it's in Proctor, Your Honor. There is a specific quote, though, and I don't want to take up the Court's time with me looking for this, but that they say that even judges are not protected from liability in administrative tasks. I do not have that cited for me, Your Honor. I know that it's cited in either the Proctor case or potentially the Maryland v. McCrae case, but I believe it's Proctor, Your Honor. And so that is where I interpret the Proctor case to have that delineation, is that an administrative task itself is ministerial unless it's of a quasi-judicial nature, which means that it is discretionary. Well, South Carolina has followed the common law for historically, and in common law, that non-discretionary actions don't receive immunity, correct? That's correct, Your Honor. Right. So in the statute, if South Carolina meant to do away with that, it would seem like they would have done that clearly in the statute, but they didn't. Yes, Your Honor. I would say that they would have to put language in there that was rejecting the McCall decision from 1985, saying we're going to restore total immunity to the government. And they didn't do that, Your Honor. The Proctor case, they specifically. Exactly. They knew McCall was out there. If they were doing their abrogating that, they would have said, no, we're doing it in common law. Non-discretionary matters are also receiving it. In this case, it's not a matter of deciding whether the administrator. The question is, is it discretionary or non-discretionary? And I think it's beyond pervention to say that this clearly was non-discretionary, right? I agree with that. The warrant should have been pulled. It wasn't. I mean, so whether you call it administrative or whatever, it seemed like South Carolina has never said that. And then you've got the Pilar case and all the cases as well. Farley, I guess you pronounce it, that that still exists. But go ahead. Well, I agree entirely, Your Honor. I also look to the dissent in DeSoto, which was heavily relied on by the court below. In fact, all they relied on, it appeared, was the DeSoto, Mississippi case, again, which is outside of South Carolina jurisdiction and contradicts South Carolina, and reading of the South Carolina code. I found that a very unusual combination. And, of course, I objected to the use of DeSoto against South Carolina precedent. But, Your Honor, if you look to the dissent, the dissent, in my opinion, gets it right. In fact, they point out to the Mississippi Supreme Court that the national review, including the United States Supreme Court, stops liability at the edges of discretion and where it meets ministerial duty. And they even go so far, and this is of some issue in the case, Your Honor, they even go so far as to correct the Supreme Court, although they're in the dissent, so it's not a binding correction, that the judge did not have the responsibility in the DeSoto case to recall the bench warrant. Much like in this case, Judge Morris and Judge Jones actually had no idea, as far as the record is concerned, what was going on with the bench warrant once they signed it and said he should be seized, including the duplication and including leaving it with the Richland County Sheriff's Department for 4 1⁄2 years. Mr. Terulak, before you sit down, because you are over your time, I have one, and my colleagues may have some other questions, but this case involved two claims, right? Below one, a 1983 claim that was dismissed, and then we're left with the state law claim. Do you think it was an abuse of discretion for the district court to exercise supplemental jurisdiction over the state law claim once the federal claim dropped out of the analysis? I do not believe it was, Your Honor. I believe my recollection allows the court to retain jurisdiction in some instances if there's been a considerable amount of activity before the court. At this time, I don't have a reason to believe they abused discretion, but again, Your Honor, the 1983 claim ultimately wasn't resolved until Judge Leiden, the trial court judge, accepted the recommendation. So it would have been a very narrow corridor of keeping jurisdiction, Your Honor. I would respectfully submit that if this case is remanded, that it would be a good question for the court whether or not they retained jurisdiction if you were to side with the appellant. I would agree with that, Your Honor. All right. Thank you very much. I'll turn it over to my opposing counsel. Mr. Lindeman, I hope you're feeling better. Thank you, Your Honor. May it please the court. And I appreciate the court's accommodation for me being able to appear remotely. Your Honors, I represent the appellees in this case, Kendall Corley and Jeanette McBride, as the clerk of court for Richland County, South Carolina. As the court just recognized from a procedural posture, the federal 1983 claim was dismissed at summary judgment, and as a result of that, there was no appeal. So the only claim that's remaining before this court is a state law negligence claim. The appellant defined the appellees as including Kendall Corley, but I would submit to the court that Mr. Corley is no longer a party on appeal because he was solely a party for the 1983 claim. The state claims were withdrawn as to him. So the correct appellee is Jeanette McBride as the clerk of court. The lower court granted summary judgment on the negligence claim based on one of several different grounds for summary judgment that we raised. There were additional sustaining grounds, obviously, that this court can address if it wishes based on the record, based on the statute of limitations running, as well as based on private analog immunity under the South Carolina TOR Claims Act. But the district court found that it was simply necessary to address one ground, and that was sovereign immunity under the TOR Claims Act, specifically under subsections 1 and 2 of 15-78-60. And that's obviously the focus of this appeal. Your Honors, I would submit to the court that the plain and ordinary language, particularly of subsection 2, is expressly applicable, explicitly applicable to the factual pattern in this case. The plaintiff alleges that the clerk of court, through her employees, failed to recall or cancel a bench warrant after that warrant was served. There are some questions as to, and I'll get to those, as to who actually had the duty, whether there is a duty recognized under South Carolina law for the clerk of court. But ultimately, in determining the immunity provision, it's not necessary to address those issues. I would submit to you that subsection 2, in particular, is very clear. It talks about administrative action or inaction of a judicial nature. That's much broader, actually, than judicial immunity is from the common law. And obviously, the state of South Carolina, when it adopted the TOR Claims Act, it reenacted sovereign immunity completely as a result of the decision in McCall v. Batson, and then waived it in certain specific aspects with certain limitations, such as caps on monetary liability. But the provision— Under section 2, what would you say constitutes a quasi-judicial administrative action? Is recalling a bench warrant an act of judicial nature or quasi-judicial nature under the act? I would think that it would be my position that canceling or revoking a bench warrant is something that's judicial in nature. Quasi-judicial is in terms of a non-judicial proceeding. It's considered in the law and fairly well established in the nature of an administrative or executive type of adjudicatory process, something along the lines of a planning commission, a board of zoning appeals. Quasi-judicial is not encompassed within judicial, but it deals with similar adjudicatory functions, but not by a court, but rather by an administrative or executive agency. Part of the confusion in this case—and before I get to that, let me point out to the court a very important point. When the South Carolina General Assembly enacted the TOR Claims Act, they intended it to be comprehensive and to limit the liability of the state and its political— Excuse me, counsel. Are you quoting from the legislative history, or this is your pining on it? I'm about to quote from the legislative history, Your Honor. Oh, the history. The legislative history in this case has actually been codified in section 1578-20, and I would call the court's attention to subsection F of that statute. It says, the provisions of this chapter establishing limitations on and exemptions to the liability of the state, its political subdivisions, and employees must be liberally construed in favor of limiting the liability of the state. And that's what I was getting to, Judge Gregory, that the General Assembly specifically codified a rule of statutory construction within the TOR Claims Act, advising the courts that the provisions of the TOR Claims Act should be liberally construed in favor of limiting the liability of the state and its political subdivisions, and that would be very applicable. I don't think that's a question. The liberal part is, the first question I ask you, what is it, judicial or quasi? When it comes to what is quasi-judicial, we should be liberal in terms of anybody, perhaps, who supports the court or judges, like this case here. Then that's the liberal part, but the question is whether or not they abrogate it. The longstanding common law clear rule that non-discretionary acts don't get immunity. So what you just read does not resolve that. It seemed to me Section 2 just makes sure that you don't have to be a judge to get immunity. It includes now administrative action, quasi-nature. It also extends there, but it didn't say that it changed the hard and fast rule, as counsel said, even for a judge. You know, it's not automatic and non-discretionary. That still is the case there, and they clearly could have abrogated that, but they didn't. Well, I would respectfully disagree. They did abrogate that. The common law? Just because it extends to administrative simply means, yes, they are in the gambit of potentially to get it, because they do things that are discretionary, and to that extent that they would get it. Beforehand, it was a question of whether or not quasi-judicial actions could even get discretionary immunity, but now we know they can. But non-discretionary continues to be, as under the common law, it is not immunity for it, and they clearly could have said it if it otherwise would have been. Well, John, I think part of the problem here, and part of the issue with the appellant's argument, is the term quasi-judicial has two definitive meanings in the law. One, it's a transformative rule. Again, what I'm saying is that what you read was exactly right. South Carolina said be liberal in terms of what is quasi-nature, and what is the administrative action. But it didn't say it's going to extend it to non-discretionary. Well, Your Honor, again, the TOR Claims Act provides a specific section, and this is a point the judge you made, subsection 5 deals with discretionary acts. And I recognize there's some confusion because quasi-judicial has multiple meanings in the law. One is, as I described it earlier, it describes adjudicatory proceedings by quasi-judicial bodies, such as a planning commission or a board of zoning appeals. As used in some of the case law that the appellant relies on, it's a synonym for discretionary. If you look at the Proctor case and the Wilson case and the Long v. Seabrook case, all of those cases, which, incidentally, none of which deal with judicial acts or any type of acts of an adjudicatory body. The Proctor case is a case involving the Department of Health. The site in that case is to the Hawkins v. Greenville County case, which is a stormwater flooding case involving the adequacy of stormwater facilities in Greenville County, have absolutely no bearing, no similarity to the issues in this case. But in those cases, the term quasi-judicial was used as a synonym of discretionary to basically say something is either ministerial or is discretionary. The case law also talks about ministerial versus quasi-judicial. But that is not the use of the term quasi-judicial in subsection 2. That's clear from the fact that they're referring to legislative, judicial, and quasi-judicial acts. Those are all obviously dealing with other branches of government and specifically adjudicatory bodies. In this case, I would submit, as the district court found, that this falls squarely within administrative action or inaction. The case law that deals with ministerial versus discretionary or ministerial versus quasi-judicial have no bearing whatsoever on this case. Mr. Lindeman, I'm sorry to interrupt. If we take your view of the matter, and you can correct me if I'm wrong about this, but you seem to be suggesting that there's a two-tiered structure with respect to immunity under the Act and who gets it or who doesn't. It seems like you're suggesting that if we're talking about judicial or quasi-judicial acts, that the immunity is broader than if we're talking about other officials who are doing acts which might or might not require the exercise of discretion, that somehow that is different and not entitled to as much immunity. The Proctor case is an example of that. You pointed out that that involved the Department of Environment and Health, and the court there discussed the issue of immunity in the context of sections 1 and 2, and I get it that it's not when I'm talking about a court official, but I guess the question is, if we took your view, we'd have two tiers of immunity. Is that what you're saying? No, I'm not suggesting that at all. I'm suggesting that discretionary... I'm sorry, before you get to your answer. Do you think the Proctor court got it wrong? I think the Proctor court was focusing on discretionary immunity, which is pursuant to section 5, and our appellate courts in South Carolina have been very clear how you can prove discretionary immunity in South Carolina requires a showing of making choices and then ultimately those choices having some sort of professional background or standards behind it. That's not what subsection 1 and 2 are. In fact, if you're going to read subsections 1 and 2 as providing only for discretionary immunity, it makes subsection 5 meaningless, and obviously you don't interpret statutes in order to make a provision meaningless. The purpose of subsections 1 and 2 were to provide judicial, quasi-judicial, prosecutorial immunities. That's the way they've been interpreted. In this particular case, a clerk of court is entitled to judicial immunity even for their ministerial acts, and that brings me to the next question, which is there hasn't even been a showing in this case that this is a ministerial act. The plaintiff simply says it's so, but there's absolutely no law to suggest that that's correct. There's no statute that governs the cancellation or recall of any arrest warrants. There's no statute that sets forth what the duties of the clerk of court are relevant to arrest warrants, the handling of arrest warrants. There's absolutely no authority that the appellant has cited to this court that would suggest that this was a ministerial or, as he calls it, mandatory duty. I'm not sure what a mandatory duty is. The law distinguishes ministerial versus discretionary. And what I would point out to the court— Oh, Mr. Lundeman, let me—I'm sorry to interrupt again, but maybe not. Maybe because it's so clear, right? If the judge makes a decision to recall a bench warrant, I can't imagine that a clerk would have any authority to somehow countermand that decision. It's the judge who has made the call, the discretionary call, whether or not to recall a warrant. And once that happens, it's up to the clerk to implement that decision. So where is the discretion in that? It seems entirely ministerial, even if the statute doesn't say so expressly. Well, there is no—the record doesn't show that the family court judge ordered the warrant to be recalled. Ultimately, the warrant was actually served on that particular day, on March 28, 2014, by a sheriff's deputy. And quite frankly, part of our position in the lower court is that it was the sheriff that had the responsibility, then, to actually not serve the duplicate warrant because the sheriff already knew that that warrant had been served. His own deputy had served the warrant on the 28th. So it is very much questionable as to who has what role. It's not established by statute. It's not established by policy. It's not established by regulation. This is not where the family court judge instructed the clerk of court to take a certain action from the bench. And, in fact, that's part of the appellant's argument. And whose burden is it to show that you have immunity? Whose burden is it to show that you have immunity? Right. That's not right. That's not right. That's a question. Whose burden is it? Yeah. The burden, it falls on the defendant for an immunity defense. Yeah, your clients. That's right. Right. And you're saying there was no evidence to show that. You're the one that had to put forth—you had the burden. Well, there's— Normally, people have a right to come to courts to address their grievances. It's only when there's a shield, as such. And you had the burden to show that the shield is present and formidable. That's right, Your Honor. And based on the documents in the record, the available documents, there is nothing that indicates that the family court judge gave any direction to the clerk of court to recall or cancel— That's the merits of the case. But as the Chief Judge Diaz said to you, can you—as I said, the judge, it should have been recalled, right? I'm just—I'm sorry I'm exaggerating, but I posed as a bend, like, oh, this is a recall by the judge. This goes into the area where it's no longer active so that no one will serve it. It's not like, well, let me see, should I serve—should I recall this one or not? I don't know. This one is—you have to do it. Again, as the question is about this whole idea of a recall or cancel, the warrant itself was served, so it's technically not going to be canceled. It was in effect and it was served. I go back to my point that I believe that the responsibility falls upon the sheriff. The sheriff actually served the warrant or his deputy served the warrant. Therefore, they should have known that the warrant had been served and there would be no need to, quote, recall or cancel the warrant. Quite frankly, you don't typically cancel a warrant that has already been served. But the bottom line is, as I was getting to, there's no evidence that this even qualifies as a ministerial duty under South Carolina law. I would point out to the court, one of the cases the appellant cited, 2008 case from the Supreme Court of Wilson v. Preston, the South Carolina Supreme Court defined a ministerial duty as it says, the duty is ministerial if it is defined by law with such precision as to leave nothing to the exercise of discretion. In this particular case, I would submit to you that a duty has not been defined by law with such precision. In fact, can't point to any statute, as I mentioned, can't point to any regulation. Even we put into evidence the section of the law. Your defense is in demur. Your defense is in demur rather than immunity. That's what you just said. My defense is, number one, this isn't a ministerial act. And number two, it falls within the scope of subsections one and two, primarily two, because it qualifies as administrative action or inaction of a judicial nature. It is not ministerial. And even if it was, there was no exception under the TOR Claims Act for ministerial acts. If the General Assembly intended that exception to be there, it would have written it in. It did not do so. And then I raised 15-7820F, stating the public policy or the legislative findings that to the extent there is any question as to the meaning of the statute, it should be construed in favor of limiting the liability of the state. Again, this whole situation with the Proctor case and the Hawkins case has no applicability here. This case does not involve a quasi-judicial act where it's defined as discretionary. The intent of subsection two was to talk about legislative, judicial, and quasi-judicial in the sense of an adjudicatory body, as I indicated. And you don't even need to get to the quasi-judicial because this is an administrative inaction of a judicial nature. As the district court said, that falls squarely under the immunity provision. And ultimately, Your Honor, we would ask the court to affirm the decision of the lower court. To the extent this court believes that the statute is difficult to interpret, I know Judge Diaz raised the possibility of certification. That would certainly be an avenue for the court to be able to ferret out the proper interpretation of subsection one and two in this context. I don't think that's necessary, but certainly that remains as a possibility. Thank you very much, Your Honors. Thank you, Mr. Lindemann. Mr. Trulich? Thank you, Your Honors. Your Honor, I actually, I must have been talking too fast in my first 15 minutes. Most of what I have to say left is really just a response to Mr. Lindemann. He noted that the recall was judiciary, Your Honor. The facts, as established by the 30B6 witness, that it's not even, in my mind, even a question, but at the very least a genuine issue of fact whether or not it was judicial because the judge had nothing to do with the way that the clerks handled the warrant after it was issued. The clerks are the ones who decided to duplicate it. The clerks are the ones who testified that they were responsible for the management of the bench warrant after it was issued, and they were the ones that testified they were responsible for recalling them after they had been served. Your Honor, the judicial act was carried out. It was finished. It was done with Judge Jones once he was seized and brought before the court. After that, it was the clerk's responsibility to deal with the aftermath of that, and it wasn't pursuant to court order. The judge didn't say, I need you to gather all the duplicate warrants that you have out there, and you're shielded by my authorization. The judge had no idea what the clerk was doing, at least according to the record, or if they did, it was a nuanced understanding. And if we look to the failed case, the failed case even says mere knowledge of what the governmental entity is doing by the judge does not convert it into a quasi-judicial act. So, Your Honor, I respectfully disagree with my opposing counsel. The recall was strictly incumbent on the clerk's office. This was not a duty of the court. In fact, once he was seized and brought before the court, that was the end of the initial bench warrant, and the duplicate was a consequence of the clerk's own office in duplicating it and sending it to the Richland County Sheriff's Department. Your Honor, Mr. Lindemann also says that Proctor was really talking about Section 5 and discretionary immunity. Proctor is an extremely comprehensive, almost treatise-like case that covers the application of the immunities from Section 1 all the way through Section 5 and beyond. It took the time to comment on this case clearly to resolve any conclusion. It was not just about Section 5. It was about explaining that Sections 1 and 2 embraced the similar concepts of discretionary decision-making. But you concede that it wasn't, I mean, it didn't cover this particular set of facts involving what we consider to be a judicial function with respect to warrants. It was an executive function, right? Yes, Your Honor. I agree that the Proctor case was not asking the question about whether or not clerks carrying out this duty was the problem. I agree with that, Your Honor. But I think that's the reason the case goes into such great detail, hitting on all these cases, that they can guide the court in the future and say, look, it's not about the role. It is about the act. And they put great focus on that, Your Honor. My opposing counsel also says that this reading would make discretionary meeting meaningless. Section 5 would make it meaningless. I don't agree, Your Honor. There are other entities out there that have no real association, whether to a judge, whether he's next door, or whether something the judge did created a necessary consequence for them to resolve. There are tons of agency out there. Certainly, we have the Department of Social Services and Jensen and the Department of Juvenile Justice and FAIL do involve judges. But, of course, we look at the Clark case where we have troopers out on the road and whether or not they're exercising their discretion in going too fast and chasing after suspects. Well, discretionary immunity became a relevant issue in that case because it was whether or not they were reckless in what they were doing. So discretionary immunity is not rendered worthless. It's just that in this case, the reading with McCall as applied to these facts says it is not about who we're talking about. It's about what they are doing. And, Your Honor, with regard to ministerial versus mandatory, it was this court in McRae, Your Honor, and I beg the court's indulgence, that stated that, quote, So this court has recognized that ministerial and mandatory are synonymous terms, and I don't think I need to quote that case for this court to understand at least that argument. Mr. Lindeman also discussed duties. This issue is not, I respectfully submit, it's not for this court on whether or not there's a duty. We're here talking about the judicial immunity. But to the extent this court deems that that's a relevant issue, Your Honor, South Carolina courts also, and I'm sure other courts as well, recognize that if you assume a duty, you are expected to act reasonably within that duty. And the clerk of court's office assumed the duty of handling these bench warrants or recalling these bench warrants when they've been served. The testimony from Mrs. Irvine was exactly that, that we have to deal with this. It is a mandatory process for us to deal with this. The duty comes from the assumption of responsibility. But again, Your Honor, I respectfully submit that duty is not an issue for this court. Finally, Your Honor, in summation, if I hadn't said it before, I do respectfully ask that the court consider the appellant arguments with regard to analyzing these facts under a ministerial duty analysis. I do ask that you reverse the trial court blow, and if more is necessary, I would ask that you reverse it with instructions to consider the facts under a ministerial duty analysis. I have nothing further, Your Honors, but I am more than happy to answer any questions with the remaining time I have left. Thank you very much. Thank you, Your Honor. I appreciate the arguments of both counsel. We'll come down and greet Mr. Truelich and Mr. Lindeman. We'll greet you virtually, I guess, since you're not here. I'm glad that you're feeling better. We'll come down and greet counsel and move on to our second case. Thank you, Your Honor.
judges: Albert Diaz, Roger L. Gregory, Jasmine Hyejung Yoon